
**FILED**
**Aug 03, 2020**
**03:33 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT MEMPHIS

| | | |
|---|---|---|
| **GWENDOLYN JUMPER,** | ) | **Docket No. 2017-08-1353** |
| **Employee,** | ) | |
| **v.** | ) | |
| **ROSSVILLE CONV FDS MAN FF** | ) | **State File No. 94430-2017** |
| **0378, d/b/a/ KELLOGG COMPANY** | ) | |
| **Employer,** | ) | |
| **and** | ) | |
| **OLD REPUBLIC INS. CO.,** | ) | **Judge Amber E. Luttrell** |
| **Carrier.** | ) | |

---

## COMPENSATION HEARING ORDER

---

Ms. Jumper alleged a gradual injury to her back and requested medical benefits as well as temporary and permanent disability benefits. Kellogg Company denied compensability of her claim based on causation and lack of notice. The Court held a Compensation Hearing to determine whether Ms. Jumper established a compensable back injury by a preponderance of the evidence. For the reasons below, the Court holds she did not and denies her claim.

### History of Claim

Ms. Jumper has worked for Kellogg for thirty-years. Over the years, she performed jobs requiring bending, lifting, and twisting. In November 2016, she reported to Kenneth Gardner, a supervisor, that "work is killing my back."[1] She testified she had no specific injury, but rather a gradual increased pain in her back. Mr. Gardner sent her to the company nurse, who instructed her to write a statement about the problems she was experiencing. Ms. Jumper drafted a statement on November 17, 2016, which read:

From 2003 to 2014 I have work[ed] on numbers of jobs here at the Rossville

---

[1] Ms. Jumper filed two Petitions for Benefit Determination, both stamped filed on April 27, 2018 and assigned the same docket number and state file number. In one Petition, Ms. Jumper listed the date of injury as December 6, 2016 (Ex. 7), and the second Petition lists the date of injury as December 16, 2016 (Ex. 6). Ms. Jumper argued at trial that neither date is correct as she is claiming a gradually occurring injury.

1

plant. I work[ed] in Battermix which requires a lot of lifting. I have work[ed] in the wheel room on Mod5, which I done a lot of lifting and dumping bits. Working as a stacker requires some lifting and dumping waffles. I work[ed] in the packaging area, which require a lot of lifting of the carton onto the machine.

Kellogg provided Ms. Jumper a panel of physicians, from which she selected Dr. Stephen Waggoner, an orthopedic spine surgeon. Dr. Waggoner testified Ms. Jumper reported low back pain, provided a history of trouble with her back "on and off" since a 2003 work injury, and worsened back pain after a lifting injury at Kellogg in 2014. He diagnosed chronic low back pain and underlying lumbar spondylosis or degenerative changes. He found no evidence of radiculopathy and believed her pain was "probably related to the mild degenerative changes in her lumbar spine." He stated she could return to work without restriction. Regarding causation, Dr. Waggoner explained Ms. Jumper did not give him a history of suffering a recent injury or series of incidents at work, so he concluded, "[W]ithout a definite history of a recent injury . . . I did not feel that it was a work-related injury."

Ms. Jumper did not complain of a work injury to Dr. Jay Saenz either, whom she saw after Dr. Waggoner. Ms. Jumper first saw Dr. Saenz for her back in February 2015. His records indicated he began treating her for pain she stated began on February 22, 201[4], when she was getting out of bed.[2] He treated Ms. Jumper conservatively over the years for a diagnosis of lumbar strain vs. facet arthritis/syndrome, and his records did not mention her work other than to note that she requested he limit her work to forty hours per week. In a physical therapy record from Dr. Saenz's office, Ms. Jumper indicated her injury occurred "years ago" and had worsened over the years. After Dr. Saenz diagnosed lumbar radiculopathy, Ms. Jumper underwent an MRI, and the record noted the history she gave was of "lower back pain radiating to the right leg since 2014." At a follow up visit, Dr. Saenz reviewed the MRI and noted it revealed a disc extrusion at L4-5, among other findings.

Ms. Jumper then requested a referral from her family physician to Dr. Glenn Crosby. She saw Dr. Crosby and reported pain across her back and down her left leg aggravated by bending and lifting and relieved somewhat by lying flat on her back. She did not tell him that she believed her condition may be work related. Dr. Crosby diagnosed lumbar radiculopathy in the left leg. He noted the L4 disc rupture on MRI, performed surgery, and released Ms. Jumper at maximum medical improvement in November 2017.

As to causation, Dr. Crosby acknowledged that he relied on a letter from Ms. Jumper's counsel in which he was asked to assume that she "works in a factory which

---

[2] Dr. Saenz's February 20, 2015 record incorrectly stated her pain began February 22, 2015; however, he corrected the date to 2014, at Ms. Jumper's request, in an addendum dated March 23, 2017.

requires her to bend, squat, stoop, push, and pull on a repetitive basis each workday" and that she experienced "no off-work trauma." Assuming those facts, Dr. Crosby stated Ms. Jumper's repetitive work activities caused the disc rupture at L4 for which he performed surgery. In terms of a percentage, he wrote, "[I]n my opinion to a reasonable degree of medical certainty, Ms. Jumper's work activities . . . are 75% to 80% of the cause of her lumbar surgery at L4."

On cross-examination, Dr. Crosby testified he did not attribute Ms. Jumper's back condition to "any particular incident" during his treatment of her and she reported she had the symptoms for "some time." He stated he first considered causation for Ms. Jumper's condition when he received the letter from her counsel, and he stated his opinion was based on that letter. Dr. Crosby had not reviewed Ms. Jumper's records except for the report of an independent medical evaluation performed by Dr. Apurva Dalal, at Ms. Jumper's attorney's request. He was not aware Ms. Jumper had any prior back injuries and stated if she did, it could affect his opinion. Further, he did not consider all causes for her back condition. The attorneys showed Dr. Crosby one of Dr. Saenz's records; however, again, relying on the work activities described by Ms. Jumper's counsel, he did not change his causation opinion.

Dr. Dalal, who performed Ms. Jumper's independent medical evaluation, agreed with Dr. Crosby's causation opinion based on the facts presented in her counsel's letter. In evaluating Ms. Jumper, he diagnosed "status post work-related injury to the lower spine requiring surgery now with continue radiculopathy." On cross-examination, Dr. Dalal acknowledged Ms. Jumper did not inform him of her prior back injuries or longstanding back pain.

At the hearing, Ms. Jumper testified regarding her previous back injuries. She stated she underwent conservative treatment for her 2003 injury, was released, and returned to work. She injured her back again in 2014 when she helped a coworker lift a heavy barrel. She stated she reported that injury, but Kellogg did not do anything and she "learned to live with the pain." Ms. Jumper stated that when she reported her complaints in November 2016, her pain had increased. On cross-examination, Ms. Jumper testified she could not recall any specific incident and described no series of incidents that caused her back pain to worsen. Ms. Jumper continues to work at Kellogg. She works as a supervisor lead, which is easier on her back.[3]

**Findings of Fact and Conclusions of Law**

---

[3] Kellogg's Human Resources Manager Tasha Corbin also testified at the hearing regarding two First Reports of Injury Kellogg filed concerning Ms. Jumper. Kellogg filed a First Report noting Ms. Jumper reported a July 6, 2016 injury stating, "I think maybe I re-injured my back in 2014 and I have been dealing with it and can't handle it anymore. I think I hurt my lower back when I was helping James Green dump a barrel of waffles that was ¾ full." The second First Report lists a December 16, 2016 date of injury that Ms. Jumper's counsel asserted was incorrect since she alleged a gradual injury.

3

At a Compensation Hearing, Ms. Jumper must establish by a preponderance of the evidence that she is entitled to the requested benefits. *Willis v. All Staff*, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Nov. 9, 2015); *see also* Tenn. Code Ann. § 50-6-239(c)(6) (2019).

The threshold issue is whether Ms. Jumper established an injury as defined in the Workers' Compensation Law. Tennessee Code Annotated section 50-6-102(14)(A) provides that an injury is "accidental" only if the injury is caused by a "specific incident or set of incidents arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Because Ms. Jumper alleged a gradually occurring injury and not one specific incident, she must prove her injury was caused by a *specific set of incidents*, identifiable by time and place of occurrence. The Court finds she did not meet her burden.

The Appeals Board considered an employee's gradually occurring injury claim and whether he satisfied the statutory definition of "injury" by demonstrating his condition was caused by a specific set of incidents in *Smiley v. Four Seasons Coach Leasing, Inc.,* 2016 TN Wrk Comp. App. Bd. LEXIS 28 (July 15, 2016). In *Smiley*, the employee alleged he was injured while operating a touring coach during a nineteen-day concert tour. While driving the coach, the employee experienced pain and symptoms in his shoulder, left hip, and low back, which he specifically attributed to a defective and/or poorly maintained seat and rough road conditions. *Id.* at *1. The Appeals Board affirmed the trial court's holding that the employee proved a specific set of incidents caused his injury. In doing so, the Board wrote, "Claimant described specific symptoms that developed and increased in intensity over an identifiable period of time while operating the coach. Moreover, he offered detailed testimony concerning a specific portion of the journey . . . that resulted in an acute worsening of his symptoms." *Id.* at *22.

In contrast to *Smiley*, here, Ms. Jumper pointed to no *specific set of incidents* at work over an identifiable period of time leading up to her report in November 2016. Instead, her direct testimony was generally that "over the years" at Kellogg, she performed jobs requiring bending, lifting, or twisting. She did not testify to her job title or duties in 2016. She stated that in 2016, there was no specific event; she just experienced increased back pain. After reporting her pain to Mr. Gardner, Ms. Jumper prepared a written statement, which did not reference any specific job duties or activities that caused her increased back pain. Instead, she referenced jobs she performed between 2003, when she first injured her back, and 2014, when she injured her back at Kellogg again.

Moreover, Ms. Jumper never reported any specific set of incidents at work in 2016 to *any* treating physicians. She only referenced work when she related her complaints to her 2003 and/or 2014 injuries.

When Ms. Jumper saw Dr. Waggoner, her panel physician, she did not provide any

specific set of incidents that caused her pain. Instead, she gave him a history of back pain dating back to her 2003 work accident. She also told him she injured her back at work in 2014, which led to her treatment with Dr. Saenz in 2015.

According to Dr. Saenz's records, Ms. Jumper never associated her back complaints to any specific set of incidents at work. Rather, he noted she said her pain increased after getting out of bed. She told her physical therapist in Dr. Saenz's office that her injury was "years ago" and described symptoms ever since her work injury in 2003. In addition, Dr. Saenz ordered an MRI and the report indicated Ms. Jumper stated her back and leg complaints dated back to 2014.

As for Dr. Crosby, while Ms. Jumper told him her back pain was aggravated by lifting and bending, he testified she never associated her back pain with any "particular incident." Instead, she told him it had been going on for "some time." He stated he treated her for the same condition as Dr. Saenz. In fact, Dr. Crosby stated he never considered causation until Ms. Jumper's attorney sent him a letter asking him to assume certain facts regarding Ms. Jumper's work.

Had Ms. Jumper established an injury, the Court further finds she did not establish medical causation by a preponderance of the evidence. An injury "arises primarily out of and in the course and scope of employment" only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(13)(B).

The Court considered the medical testimony of Drs. Waggoner, Crosby, and Dalal. Dr. Waggoner testified her back condition was not related to her work based on the lack of a specific history of an injury. As the panel physician, his opinion is afforded a rebuttable statutory presumption of correctness under Tennessee Code Annotated section 50-6-102(14)(E) (2019).

Dr. Crosby causally related Ms. Jumper's back injury to her work based on her counsel's hypothetical that she "works in a factory which requires her to bend, squat, stoop, push, and pull on a repetitive basis each work day" and had no "off-work trauma." However, the Court finds Dr. Crosby's causation opinion problematic since he stated he did not consider all causes in forming his opinion, and he based his opinion on hypothetical facts that were unsupported by Ms. Jumper's testimony at trial.

As discussed above, Ms. Jumper gave no history of any specific work activities that led to her pain she reported in 2016. Thus, there was simply no testimony that she was squatting, stooping, pushing, or pulling on a repetitive basis each day. In *Bearden v. Memphis Dinettes, Inc.,* 690 S.W.2d 862, 868 (Tenn. 1984), the Supreme Court held that hypothetical questions seeking expert opinion evidence "are improper and of no value when they assume facts not supported by the evidence." Because the letter soliciting Dr.

Crosby's opinion contained foundational statements of fact that were unsupported by the evidence, the Court affords his causation opinion little weight. Likewise, the Court affords Dr. Dalal's causation opinion little weight for the same reason. Consequently, the Court holds Ms. Jumper did not overcome the presumption of correctness afforded Dr. Waggoner's opinion. [4] [5]

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Jumper's claim for workers' compensation benefits is denied.

2. Absent an appeal of this order, it shall become final thirty days after issuance.

**ENTERED August 3, 2020.**

*Amber Luttrell*
_____
**JUDGE AMBER E. LUTTRELL**
**Court of Workers' Compensation Claims**

**Appendix**

Technical Record:

1. Petition for Benefit Determination listing 12-16-2016 date of injury
2. Dispute Certification Notice
3. Scheduling Order
4. Joint Motion to Continue Mediation
5. Order on Joint Motion to Continue Mediation
6. Joint Motion to Continue Compensation Hearing
7. Order on Joint Motion to Continue Compensation Hearing
8. Post-Discovery Dispute Certification Notice
9. Joint Motion to Continue Compensation Hearing
10. Order Granting Joint Motion to Continue
11. Joint Motion to Continue Compensation Hearing
12. Order Granting Joint Motion to Continue
13. Order Resetting Compensation Hearing
14. Order Resetting Compensation Hearing
15. Employer's Motion for Summary Judgment

---

[4] Ms. Jumper argued in closing that the Court should strike down as invalid the statutory presumption afforded panel physicians under Tennessee Code Annotated section 50-6-102(e) contending it violates Tennessee Code Annotated section 50-6-116, which provides that the Workers' Compensation Act shall not be remedially or liberally construed but shall be construed fairly, impartially, and in accordance with basic principles of statutory construction and . . .shall not be construed in a manner favoring either the employee or the employer. The Court finds no merit in Ms. Jumper's argument.

[5] Based on the Court's holding, it need not address Kellogg's notice argument.

16. Order Denying Summary Judgment
17. Plaintiff's Pre-trial Statement
18. Employer's Pre-trial Statement
19. Joint Pre-Compensation Hearing Statement

Exhibits:
1. First Report of Injury- 12-16-2016 date of injury
2. Ms. Jumper's written statement
3. Panel of Physicians
4. Notice of Denial of Claim
5. First Report of Injury- 7-6-2016 date of injury
6. Petition for Benefit Determination listing 12-16-2016 date of injury
7. Petition for Benefit Determination listing 12-6-2016 date of injury
8. Dr. Crosby's deposition
9. Dr. Dalal's deposition
10. Dr. Waggoner's deposition
11. Employer's Amended Medical Records Index

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on August 3, 2020.

| Name | Via Email | Service Sent to: |
| --- | --- | --- |
| Steve Taylor, Employee's Attorney | X | staylor@tcmfirm.com |
| Tom Smith, Employer Attorney | X | tsmith@spicerfirm.com |

*Penny Shrum*
**Penny Shrum, Clerk**
**WC.CourtClerk@tn.gov**



<u>Compensation Hearing Order Right to Appeal</u>:

If you disagree with this Compensation Hearing Order, you may appeal to the Workers' Compensation Appeals Board or the Tennessee Supreme Court. To appeal to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the compensation hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fullycompleted Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. A licensed court reporter must prepare a transcript and file it with the court clerk *within fifteen calendar days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the court clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties. The appealing party has *fifteen calendar days* after the date of that notice to submit a brief to the Appeals Board. *See the Practices and Procedures of the Workers' Compensation Appeals Board.*

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Hearing Order must be final and you must comply with the Tennessee Rules of Appellate Procedure. If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry.** *See* **Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation  www.tn.gov/workforce/injuries-at-work/

wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____ **Employer**

Notice is given that _____ *[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date filestamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____ issued

by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s)** (Requesting Party): _____  ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____

*__ [Signature of appellant or attorney for appellant]*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived.  The following facts support my poverty.

1. Full Name:_____    2. Address: _____

3. Telephone Number: _____    4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | | |
|---|---|---|---|---|
| AFDC | $ _____ | per month | beginning | _____ |
| SSI | $ _____ | per month | beginning | _____ |
| Retirement | $ _____ | per month | beginning | _____ |
| Disability | $ _____ | per month | beginning | _____ |
| Unemployment | $ _____ | per month | beginning | _____ |
| Worker's Comp. | $ _____ | per month | beginning | _____ |
| Other | $ _____ | per month | beginning | _____ |

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental   $ _____ per month

| | | | | | |
|---|---|---|---|---|---|
| Groceries | $ _____ per month | | Telephone | $ _____ | per month |
| Electricity | $ _____ per month | | School Supplies | $ _____ | per month |
| Water | $ _____ per month | | Clothing | $ _____ | per month |
| Gas | $ _____ per month | | Child Care | $ _____ | per month |
| Transportation | $ _____ per month | | Child Support | $ _____ | per month |
| Car | $ _____ per month | | | | |
| Other | $ _____ per month (describe: _____ ) | | | | |

10. Assets:

| | | |
|---|---|---|
| Automobile | $ _____ | (FMV) _____ |
| Checking/Savings Acct. | $ _____ | |
| House | $ _____ | (FMV) _____ |
| Other | $ _____ | Describe: _____ |

11. My debts are:

Amount Owed          To Whom

_____    _____

_____    _____

_____    _____

_____    _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____

NOTARY PUBLIC

My Commission Expires:_____